UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 6059 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| J.R.S-I, INC., STEVEN J. FINK & ASSOCIATES, P.C., | ) | |
| and LUK DABROWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Kathleen Butler sued J.R.S.-I, Inc., Steven J. Fink & Associates, P.C., and Luk

Dabrowski for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et*

*seq.*, and state law. Doc. 36. JRSI and Fink—the docket does not reflect that Dabrowski has

been served—have moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6).

Doc. 38. The motion is granted as to the state law claims (which Butler has withdrawn, Doc. 46

at 10) and denied as to the FDCPA claims.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative

complaint's well-pleaded factual allegations, though not its legal conclusions. *See Smoke Shop,*

*LLC v. United States,* 761 F.3d 779, 785 (7th Cir. 2014). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred

to in it, and information that is subject to proper judicial notice," along with additional facts set

forth in Butler's brief opposing dismissal, so long as those facts "are consistent with the

pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal

quotation marks omitted); *see also Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327,

335 (7th Cir. 2015). The facts are set forth as favorably to Butler as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). The court does not vouch for the accuracy of those facts. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 384 (7th Cir. 2010).

On September 7, 2012, JRSI, with Fink as its counsel, sued Butler in the Circuit Court of Cook County, Illinois, to collect a $2,091.57 debt that Butler allegedly incurred on a credit card account at HSBC Orchard Bank. Doc. 36 at ¶¶ 14-15, 18; Doc. 36-1 at 8. Attached to the state court complaint was an affidavit from Lawrence Spilg, JRSI's president, attesting to Butler's indebtedness. Doc. 36 at ¶¶ 29-32; Doc. 36-1 at 9. The affidavit averred in relevant part:

> Lawrence Spilg, after having been first duly sworn, on oath states that if called to testify in this matter he would testify to the following facts:
>
> 1.     That he is the president of Plaintiff, J.R.S.I. Inc.. [*sic*] Upon information provided to him by the transferor of the debt, he is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.
>
> 2.     That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, KATHLEEN BUTLER, is liable.
>
> 3.     That after all charges and just credits to this account have been given to the defendant, *there remains due and owing* to Plaintiff from Defendant, KATHLEEN BUTLER, the sum of $2091.57 (which *includes $350 as reasonable attorney fees*) plus court costs and post-judgment interest at the rate allowed by law.

*Ibid*. (emphasis added). When Spilg's affidavit was filed, court costs and post-judgment interest had not been awarded to JRSI and thus were not "due and owing" from Butler. Doc. 36 at ¶¶ 33-37. JRSI had not incurred any attorney fees, and such fees would be due only if JRSI were to win a judgment against Butler. *Id*. at ¶¶ 41-45. Also attached to JRSI's complaint was a document titled "Generic Cardmember Agreement." Doc. 33-1 at 4-5; Doc. 36 at ¶¶ 39-40.

Defendants do not possess a copy of the agreement that created Butler's alleged debt or any agreement that supports the imposition of attorney fees on Butler. *Id*. at ¶ 39. The "Generic Cardmember Agreement" is not Butler's agreement with HSBC. *Id*. at ¶ 40.

To effect service on Butler, Fink hired a detective agency that employed Dabrowski as a special process server. *Id*. at ¶¶ 24, 54. On June 19, 2013, Dabrowski filed an affidavit from Dabrowski averring that he had served Butler the previous day by leaving the summons and a copy of the complaint with a thirty-five-year-old white male relative at Butler's place of abode on West Paddock Drive in Wheeling, Illinois. *Id*. at ¶¶ 25, 55-61, 65; Doc. 36-1 at 11. Butler did not live at that address on June 18, 2013, as her home at that address had been foreclosed upon in 2009 and sold at judicial sale. Doc. 36 at ¶ 61. In part on the strength of Dabrowski's affidavit, a default judgment was entered against Butler on July 19, 2013. *Id*. at ¶¶ 67, 81.

On March 20, 2015, Fink filed a Citation to Discover Assets in an effort to collect upon the default judgment. *Id*. at ¶ 82. Butler received a copy of the citation answer from her employer on April 6, 2015. *Id*. at ¶ 83; Doc. 36-1 at 15. Prior to receiving that document, Butler had been unaware of the state court action or the judgment against her. Doc. 36 at ¶ 21. Upon learning of the existence of the state court action and judgment, Butler consulted with attorneys at the Debtors Legal Clinic, who on June 11, 2015 filed an emergency motion to quash service of process. *Id*. at ¶ 68. On July 6, 2015, the state court granted the motion, and the July 2013 default judgment was vacated. *Id*. at ¶ 69; Doc. 36-1 at 13. Three days later, Butler brought this federal suit. Doc. 1.

## Discussion

Count I of the operative complaint alleges that JRSI and Fink violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) by falsely representing the

amount and legal status of Butler's debt by attempting to collect court costs, post-judgment interest, and attorney fees; by threatening to take action that cannot legally be taken and acting unfairly and unconscionably by attempting to collect the same; and by falsely and unfairly representing that the "Generic Cardmember Agreement" authorized the collection of a debt from Butler. Doc. 36 at ¶¶ 90-94. Count II alleges that JRSI and Fink violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(13), and 1692f by falsely claiming, through Dabrowski, to have served Butler, and then by Dabrowski's affidavit to communicate falsely to Butler and third parties that she had been served. *Id*. at ¶¶ 95-97.

## I.    Statute of Limitations

First, JRSI and Fink move to dismiss Butler's claims as time-barred by the FDCPA's statute of limitations, which requires suit to be brought "within one year from the date on which the violation [of the FDCPA] occurs." 15 U.S.C. § 1692k(d); *see* Doc. 33 at 3-5; Doc. 38 at ¶ 5; Doc. 51 at 2-4. "[B]ecause the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1030 (7th Cir. 2004); *see also Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.,* 782 F.3d 922, 928 (7th Cir. 2015) ("Dismissing a complaint at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. Further, these defenses typically turn on facts not before the court at that stage in the proceedings.") (citation and internal quotation marks omitted). "But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012); *see also Bonnstetter v. City of Chicago*, 811 F.3d 969, 974 (7th Cir. 2016) ("A statute of limitations defense is properly considered in determining a Rule 12(b)(6) motion when the

factual allegations in the complaint establish such a defense.").  "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute of limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr.*, 782 F.3d at 928.

The court "find[s] it appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the complaint." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).  As noted, Butler alleges two FDCPA violations: the September 7, 2012 filing of the state court action and Spilg's affidavit, and the July 19, 2013 filing of Dabrowski's affidavit. This federal suit was filed on July 9, 2015.

The Seventh Circuit has not directly addressed when the FDCPA statute of limitations begins to run in cases where the alleged violations concern conduct in a state court collection action—when the state court action was *filed*, when the state court complaint was *served*, or when the *debtor learned* of the state court action—and other courts of appeals are split on the issue.  *See Serna v. Law Office of Joseph Onwuteaka, P.C.,* 732 F.3d 440, 447-48 (5th Cir. 2013) (when the debtor receives notice of the suit); *Johnson v. Riddle,* 305 F.3d 1107, 1113 (10th Cir. 2002) (when process is served); *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 463-64 (6th Cir. 2013) (when the suit is filed); *Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir. 1997) (same) (citing *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995), and *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992)).  Decisions from this District have largely held that the statute of limitations begins to run when the state court action is filed, not when the debtor is served with or otherwise notified of the suit.  *See Hill v. Freedman Anselmo Lindberg, LLC*, 2015 WL 2000828, at *2 (N.D. Ill. May 1, 2015); *Pihl v. Law Office of Keith S. Shindler, Ltd.*, 2015 WL

1137695, at *2 (N.D. Ill. Mar. 10, 2015) (collecting cases); *Balik v. Blitt & Gaines, P.C.*, 2015 WL 764013, at *2 (N.D. Ill. Feb. 21, 2015); *Padilla v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2015 WL 513277, at *2 (N.D. Ill. Feb. 5, 2015); *Komisar v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 2015 WL 427845, at *2 (N.D. Ill. Jan. 29, 2015); *Lockhart v. HSBC Fin. Corp.*, 2014 WL 3811002, at *9-10 (N.D. Ill. Aug. 1, 2014).

The state court action against Butler was filed on September 7, 2012, and Butler did not bring this federal suit until more than thirty-four months later. Butler does not dispute these dates, but she makes two arguments as to why her claims are not time-barred by the FDCPA's one-year statute of limitations. Doc. 46 at 2-5.

First, Butler invokes the discovery rule, which "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The discovery rule "exists in part to preserve the claims of victims who do not know they are injured," *Gabelli v. Sec. & Exch. Comm'n*, 133 S. Ct. 1216, 1222 (2013), and is "standardly the case with federal claims," *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). Applying the rule here, Butler argues that the statute of limitations began to run when she learned of the state court action on April 6, 2015, three months before she filed this suit, providing a "set of facts that if proven would establish a defense to the statute of limitations." Doc. 46 at 2-3 (quoting *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003)).

That argument is difficult to reconcile with *TRW Inc. v. Andrews*, 534 U.S. 19 (2001). In *TRW*, the Ninth Circuit applied the discovery rule to a suit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, "on the premise that all federal statutes of limitations, regardless of context, incorporate a general discovery rule unless Congress has expressly

legislated otherwise." 534 U.S. at 27 (internal quotation marks omitted). While acknowledging that "lower federal courts generally apply a discovery accrual rule when a statute is silent on the issue," the Supreme Court cautioned that "we have not adopted that position as our own" and that "Congress can convey its refusal to adopt a discovery rule … by implication from the structure or text of the particular structure." *Id.* at 27-28 (internal quotation marks omitted). The Court then held that because the FCRA expressly provides that suit could be brought "within two years from the date on which liability arises" subject to one exception for a defendant's willful misrepresentation of material information, 15 U.S.C. § 1681p, the FCRA was not "'silent on the issue' of when the statute of limitations begins to run," and a general discovery rule therefore did not apply. *Id.* at 28.

Like the FCRA, the FDCPA it is not "silent" on when the limitations period commences. The FDCPA specifies that suit must be brought "within one year from the date on which the violation *occurs*." 15 U.S.C. § 1692k(d) (emphasis added). The FDCPA's inclusion of this language, and the absence of any language indicating that the limitations period commences upon the plaintiff's discovery of her claim, arguably supports the "'standard rule' … that a claim accrues when the plaintiff has a complete and present cause of action." *Gabelli*, 133 S. Ct. at 1220; *see also United States v. Mw. Generation, LLC*, 720 F.3d 644, 646 (7th Cir. 2013). It is true that two courts of appeals have ruled after *TRW* that the discovery rule applies in FDCPA suits, but one did so in an unpublished opinion, *see Lembach v. Bierman*, 528 F. App'x 297, 301-02 (4th Cir. 2013), and the other did so as a matter of intra-circuit *stare decisis*, *see Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939-941 (9th Cir. 2009) ("[*TRW*] is surely food for thought and worth musing on, but it does not overrule or seriously undermine our general approach to the point that we can now ignore preexisting Ninth Circuit law. We simply cannot

declare that the [discovery] rule is inapplicable in a case like this one.").  All other circuits to consider this issue post-*TRW* have declined to decide the issue.  *See Serna*, 732 F.3d at 449 n.18; *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010); *Johnson*, 305 F.3d at 1113 n.3.  Two decisions in this District hold that the discovery rule applies to § 1692k.  *See Stone v. Wash. Mut. Bank.*, 2011 WL 3678838, at *7-8 (N.D. Ill. Aug. 19, 2011); *Greenfield v. Kluever & Platt, LLC*, 2010 WL 604830, at *1-2 (N.D. Ill. Feb. 16, 2010).

There is no need to run the discovery rule issue to ground here, for Butler's second argument—that she is entitled to equitable tolling of the statute of limitations from the date the state action was filed until April 6, 2015, when she became aware of the action, Doc. 46 at 3-4— is correct.  Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."  *Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) (emphasis and internal quotation marks omitted).  "The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis."  *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (internal quotation marks omitted).  "If a reasonable" person in Butler's "position would not have known until" April 6, 2015 of the state court action and Dabrowski's allegedly fraudulent affidavit, she "could appeal to the doctrine of equitable tolling to suspend the running of the statute of limitations for such time as was reasonably necessary to conduct the necessary inquiry."  *Cada*, 920 F.2d at 451.  "The rule in the federal courts is that … equitable tolling [is] … grafted on to federal statutes of limitations" except in the case of statutes of repose or jurisdictional provisions.  *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011).  Section 1692k(d) is not a statute of repose, and the FDCPA's statute of limitations is procedural, not jurisdictional.  *See Marshall-Mosby v. Corporate*

8

*Receivables, Inc.*, 205 F.3d 323, 327 (7th Cir. 2000) ("[T]he statute of limitations provision in the FDCPA is not a jurisdictional restriction.").

Butler is entitled to equitable tolling, at least at the pleading stage. Butler alleges that she was unaware of the state collection action until April 2015 because, contrary to Dabrowski's allegedly false affidavit, she was never served. Doc. 36 at ¶¶ 61-63, 83. The complaint does not indicate whether Defendants made any previous attempts to serve Butler, but, at the very least, Dabrowski's allegedly fraudulent service is an "[e]xtraordinary circumstance[] far beyond the litigant's control" that "prevented timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). The pleadings do not indicate explicitly the degree of diligence that Butler exercised to discover her FDCPA claim, but they also provide no suggestion as to how she would have been aware of the state court action, other than that she "incurred a debt … and it went into default." Doc. 36 at ¶¶ 14-15. The fact that she very quickly consulted with the Debtors Legal Clinic after first learning of the default judgment, and that the state court swiftly granted her motion to quash the service of process from nearly two years earlier, *id*. at ¶¶ 68-69, suggests a level of diligence that at a minimum supports "a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense." *Sidney Hillman Health Ctr.*, 782 F.3d at 928; *cf. Elmore v. Henderson*, 227 F.3d 1009, 1013 (7th Cir. 2000) ("[H]e could not possibly invoke the doctrine of equitable tolling unless he sued just as soon as possible after the judge's action made him realize that the statute of limitations had run. He waited four months to sue and has offered no excuse for the delay.").

JRSI and Fink contend that Butler is not entitled to equitable tolling because "the FDCPA is silent on the doctrine of tolling … but is clear that the statute of limitations is one year." Doc. 51 at 3. This argument fails to persuade, for equitable tolling need not find purchase in the

statutory text; rather, it has been "grafted on to federal statutes" by the judiciary. *McCann*, 663

F.3d at 930. And while JRSI and Fink attempt to distinguish the facts of *Marshall-Mosby* and

*Marcello*, Doc. 51 at 4, they do not explain why this court should disregard the legal principles

from those cases: that § 1692k(d) is procedural rather than jurisdictional, *see Marshall-Mosby*,

205 F.3d at 327; and that equitable tolling may apply in "extraordinary circumstances,"

*Marcello*, 212 F.3d at 1010. Those principles allow for equitable tolling at the pleading stage

under the particular facts of this case.

## II.    Merits of the FDCPA Claims

Congress enacted the FDCPA to eliminate abusive debt collection practices, to protect

debt collectors who abstain from abusive practices, and to promote consistency in consumer

protection litigation. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S.

573, 577 (2010); *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir.

2015). Section 1692e prohibits a debt collector—a term that encompasses both JRSI and Fink—

from using "any false, deceptive, or misleading representation or means in connection with the

collection of any debt." 15 U.S.C. § 1692e; *see Ruth v. Triumph P'ships,* 577 F.3d 790, 799-800

(7th Cir. 2009) (internal quotation marks omitted). The provision is essentially a "rule against

trickery," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 473 (7th Cir.

2007), and sets forth "a nonexclusive list of prohibited practices" in sixteen subsections,

*McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1019 (7th Cir. 2014). Although a plaintiff

"need not allege a violation of a specific subsection in order to succeed in a § 1692e case," *Lox v.

CDA, Ltd.,* 689 F.3d 818, 822 (7th Cir. 2012); *see also Ruth,* 577 F.3d at 794 n.2, Butler's

complaint cites subsections (2), (5), (10), and (13), which proscribe, respectively, "[t]he false

representation of … the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A);

"[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5); "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10); and "[t]he false representation or implication that documents are legal process," *id.* § 1692e(13). The complaint also alleges that JRSI and Fink violated 15 U.S.C. § 1692f, which prohibits debt collectors from employing "unfair or unconscionable means to collect or attempt to collect any debt," including attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

JRSI and Fink argue that Butler does not state a viable claim because "the FDCPA is not an enforcement mechanism for state procedural law."  Doc. 33 at 5; Doc. 51 at 5-6.  While the precise thrust of this argument is unclear, JRSI and Fink appear to suggest that because all of Butler's claims rest either on the filing of the state court collection action and Spilg's affidavit or on Dabrowski's allegedly false affidavit, Butler's allegations are more properly that JRSI and Fink violated a state procedural rule (one that Defendants have not identified) and that her remedies therefore arise exclusively under state law.  Doc. 33 at 6-7.

This argument fails to persuade.  True enough, the Seventh Circuit has repeatedly held that the "FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law."  *Bentrud*, 794 F.3d at 875 (citing *Beler*, 480 F.3d at 474); *see also Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014) ("Section 1692e forbids debt collectors to tell lies but does not suggest that federal courts are to review state-court decisions about whether lies have been told. Section 1692e does not even hint that federal courts have been authorized to monitor how debt-collection litigation is handled in state courts.") (emphasis omitted); *Olvera v. Blitt & Gaines*,

431 F.3d 285, 287 (7th Cir. 2005) (holding that the FDCPA is not "a vehicle for enforcing a state law"). But unlike Butler, the plaintiffs in *Bentrud*, *Beler*, and *Olvera* sought to employ the FDCPA to enforce independent legal obligations not themselves imposed by the FDCPA. In *Bentrud*, the plaintiff sought "to transform the FDCPA into an enforcement mechanism for the arbitration provision in his credit card agreement" that governed the underlying collection complaint. 794 F.3d at 875. The plaintiff in *Beler* urged the court to find that violations of 42 U.S.C. § 407(a), which exempts Social Security benefits from collection or attachment, and an Illinois law adopting the same rule were for no other reason *per se* violations of § 1692f's prohibition on the use of "unfair or unconscionable means" to collect debt. 480 F.3d at 473-74. And in *Olvera*, the plaintiff similarly proposed that a violation of an Illinois law governing usury was an FDCPA violation solely by virtue of violating state law. 431 F.3d at 287. In those cases, the Seventh Circuit's response was the same: the plaintiffs should have sought to enforce the underlying state or federal laws themselves, not through the FDCPA.

By contrast, Butler seeks only to enforce the FDCPA; indeed, JRSI and Fink do not even hazard a guess as to what state law they are alleged to have violated. That the misrepresentations, threatened illegal actions, and unfair and unconscionable means of collection alleged by Butler took place in the context of a state court action does not mean that they cannot violate the FDCPA. Granted, the Seventh Circuit has twice expressly declined to decide whether § 1692e applies to filings in state court, *see O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 n.1 (7th Cir. 2011); *Beler*, 480 F.3d at 472-73, but it did so only in the context of whether the FDCPA requires the inclusion of certain facts in state court collection complaints. Significant here, the Seventh Circuit has at least twice affirmed FDCPA judgments for plaintiffs based on alleged misrepresentations in state court complaints. *See Veach v. Sheeks*, 316 F.3d

690, 692-94 (7th Cir. 2003) (misrepresentation in the summons and complaint); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 471 (7th Cir. 2000) (misrepresentation in the complaint). In half a sentence, JRSI and Fink characterize Butler's reliance on those two cases is "misplaced," but they do not explain how or why. Doc. 51 at 5. That particular argument accordingly is forfeited for purposes of this motion. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped."); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted).

Even putting aside forfeiture, "it is well-established among the judges in this district that [a] valid FDCPA claim exists if a defendant makes a false or misleading statement relating to the collection of a debt whether the statement was made in a state court complaint or during state court litigation." *Riley v. Portfolio Recovery Assocs., LLC*, 2015 WL 1594298, at *3 (N.D. Ill. Apr. 7, 2015) (quoting *St. John v. CACH, LLC*, 2014 WL 3377354, at *3 (N.D. Ill. July 8, 2014)) (internal quotation marks omitted); *see also Grant–Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 944 (N.D. Ill. 2012) ("The filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt."); *Jenkins v. Centurion Capital Corp.,* 2007 WL 4109235, at *2 (N.D. Ill. Nov.

15, 2007) ("[P]resent Seventh Circuit case law does not preclude a claim based on a false representation in a state-court complaint under the FDCPA.").  Butler's complaint alleges that JRSI and Fink repeatedly made false representations regarding the status and amount of debt and whether Butler had been served, Doc. 36 at ¶¶ 90-97, and that is sufficient to state a claim under the FDCPA provisions invoked by Butler.

As noted, Count I alleges that JRSI falsely represented the amount of the debt by alleging in the state court collection complaint that Butler already owed costs, post-judgment interest, and attorney fees in addition to her underlying credit card debt.  Doc. 36 at ¶¶ 91-94.  JRSI and Fink retort that because Illinois law permits the collection of post-judgment interest, *see* 735 ILCS 5/2-1303; 735 ILCS 5/12-109(a) ("Every judgment except those arising by operation of law from child support orders shall bear interest thereon as provided in Section 2-1303."), and because the alleged cardmember agreement permits the recovery of attorney fees and court costs, Butler's claims are not viable under the FDCPA.  Doc. 33 at 7-8; Doc. 51 at 6-8.

That argument is wrong.  Illinois law authorizes the collection of post-judgment interest, but representing that interest was *already* due and owing at the time the state court action was filed—before judgment, and therefore before any post-judgment interest could be due—was a misrepresentation within the meaning of the FDCPA.  Doc. 36-1 at 8 ("That … there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $2091.57 … plus post-judgment interest at the rate allowed by law until the debt is paid.").  The Seventh Circuit "has consistently held that with regard to 'false, deceptive, or misleading representations' in violation of § 1692e of the FDCPA, the standard is … whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer if the consumer is not represented by counsel."  *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599,

603 (7th Cir. 2016); *see also Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (noting that FDCPA claims "are evaluated under the objective 'unsophisticated consumer' standard"). This standard protects a consumer who "may be uninformed, naïve, or trusting," but who nonetheless "possess[es] rudimentary knowledge about the financial world." *Ibid*. (internal quotation marks omitted). Under that standard, it is likely that "a significant fraction of the population" would erroneously interpret the post-judgment interest as already due to JRSI. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000).

Moreover, because Butler's complaint alleges that the "generic cardmember agreement" attached to the state court complaint does not govern her credit card debt, Doc. 36 at ¶¶ 40, 93, she has stated a viable claim regarding the attorney fees and court costs as well. JRSI and Fink argue that the agreement allows recovery of attorney fees and costs, and that "when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's state permission, state those fees and costs." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004); *see* Doc. 33 at 8. This argument puts the cart before the horse. To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Stapleton v. Advocate Health Care Network*, __ F.3d __, 2016 WL 1055784, at *3 (7th Cir. Mar. 17, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). Accepting the complaint as true, Butler's allegation that the cardmember agreement attached to the state court complaint is not the agreement that created the

alleged debt, and thus that its authorization of attorney fees and costs does not apply to Butler's debt, Doc. 36 at ¶¶ 39-40, 93, is facially plausible and states a viable claim under the FDCPA.

JRSI and Butler submit that the Illinois Code of Civil Procedure, which requires that "a complaint must contain a prayer for relief for every count 'to which the pleader deems himself or herself entitled,'" obligated them to include a demand for attorney fees and costs in the state court complaint. Doc. 51 at 7 (quoting 735 ILCS 5/2-604). But the problem with the state court complaint was not that it *demanded* attorney fees and costs, but that it stated that those fees and costs were *already* due and owing, which was an actionable misrepresentation. In addition, Butler alleges that the cardmember agreement attached to the state court complaint did not govern her underlying transaction, which provides another reason why the complaint's allegation regarding fees and costs was a misrepresentation.

Count II alleges that that JRSI and Fink violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(13), and 1692f by falsely claiming, through Dabrowski, to have served Butler, and then by using Dabrowski's affidavit to communicate falsely to Butler and third parties that she had been served. Doc. 36 at ¶¶ 95-97. JRSI and Fink contend that because neither Fink nor JRSI testified personally that Butler was served, and because neither created, signed, or notarized Dabrowski's affidavit, the complaint improperly "lump[s] J.R.S.I. and Fink together with the process [server] as 'Defendants' to create" FDCPA liability against them. Doc. 51 at 8-10. JRSI and Fink forfeited this argument for purposes of their Rule 12(b)(6) motion by not raising it until their reply brief. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised

the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue.").

The argument fails on the merits in any event. True, the Seventh Circuit has "rejected complaints that have 'lumped together' multiple defendants," but it has done so where "the complaint was bereft of any detail concerning who was involved in each allegedly fraudulent activity." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1993) (internal quotation marks omitted). That is not the case here because the complaint details each defendant's role in the alleged FDCPA violations: JRSI and Fink are responsible for the misrepresentations in the September 7, 2012 state court complaint and Spilg's affidavit, Doc. 36 at ¶¶ 91-94; Dabrowski committed the allegedly fraudulent service of process and signed the false affidavit of service, *id.* at ¶¶ 55-60; and JRSI and Fink ratified Dabrowski's actions by filing his false affidavit and inducing the state court to render a default judgment against Butler, *id.* at ¶¶ 79-81, 96-97.

## Conclusion

For the foregoing reasons, JRSI and Fink's motion to dismiss is granted as to the state law claims and denied as to the FDCPA claims. The state law claims (Counts III-V of the operative complaint) are dismissed. JRSI and Fink shall answer the surviving portions of the complaint by April 18, 2016.

April 4, 2016

_____
United States District Judge